Citizens and Immigration Courts, et al., Appellates. Mr. Bates for the Appellates. Mr. Kersang for the Accolades. Thank you, Mr. Bates. Good morning, Your Honors, and may it please the Court, Christopher Bates for the Appellates. I'd like to reserve three minutes for rebuttal. The EB-5 program is an immigration program that provides visas to individuals who invest, who have invested, or who are actively in the process of investing capital in a new commercial enterprise. This case is about whether a person can use a loan secured by someone else or not secured by or not secured at all to obtain a visa. The agency here has properly interpreted its own regulation to determine that the answer to that question is no, because loan proceeds must be secured by the petitioner's own assets in order to qualify as qualifying capital for purposes of the EB-5 program. The agency's definition that it is promulgated to define capital sets forth various categories of investments that can qualify as capital. One of those categories is cash. One is indebtedness. The agency has interpreted its regulation to treat loan proceeds as indebtedness such that the additional This is confirmed by various contextual indications in the agency's regulation. We've identified a number of these in our brief. I would highlight just a few for the Court. The first is the requirement... Can we just, before we get to context, can we talk about text? The loan proceeds are cash, right? So... If I take out a loan because I need money to buy various things, I get the loan and then I use the cash to buy things. So that's, I think, sort of going to the ultimate question in this case, Your Honor. Certainly the way that the investments are often made in these cases are through a wire transfer to the new commercial enterprise, or often placement of funds in an escrow account with the new commercial enterprise. So it's not, you know, a suitcase of bills that are being sent. But it's cash in the sense the entity takes it free and clear of encumbrances, right? So it is clear that the new commercial enterprise does receive it without encumbrances. As we explain in our briefs, the agency takes a look at the transactions here from the perspective of the investor. Again, because this is an immigration program, it's about providing visas to the investors. And so it makes sense to take a look at the transaction... In order to invest in this country, in U.S. enterprises, right? In order to invest in U.S. enterprise, that's correct. And another important aspect of the program is the requirement that the capital be placed at risk. And as we've explained, there's a difference in terms of, from the perspective of the investor, whether that capital is truly at risk for that investor if we're talking about a wire transfer that is not the proceeds of a loan versus loan proceeds. When the investor gets the loan, right? On the investor's balance sheet, the cash will be an asset and the obligation to the bank will be a liability. It takes the asset and transfers it to a U.S. entity. So that's at risk. He said it's his cash. If the U.S. enterprise fails, the investor will be out of that cash and then he's going to have problems owing the bank the amount of the loan. A couple of risks. That's correct, Your Honor. The distinction comes into play with sort of what happens to the investor if that's so. So yes, the investor doesn't get the cash back. But if the loan is secured by the investor's own assets, then the investor is on the hook for repaying that loan to the bank or, you know, whatever the source was of that loan. If the loan is secured by a third party's assets or not secured at all, then the investor is not on the hook for repaying that loan in the way that the investor would be if it was just free and clear. And so this goes to that at-risk requirement. Are people not obligated to pay back unsecured loans and have legal consequences if they don't? If I don't have to pay my credit card this month, it would be incredibly helpful. So individuals are obligated to pay back unsecured loans, Your Honor. And then legal consequences flow if they don't. That is correct. And they can lose property. The program requires a certain investment amount. The statute originally said $500,000 or $1 million, depending on what the type of investment was. It recently changed to $900,000 or $1.8 million. And so it's not just, you know, is there some amount that the investor is on the hook, but the investor needs to be on the hook or have their assets at risk for the full amount of that investment. And so one problem with the non-secured loans, so yes, the investor then is going to be, you know, have an obligation, have a legal obligation to repay. But the full amount of the required investment isn't necessarily going to be at risk because, you know, that's going to depend on how many assets the investor has. Do they have $500,000 or $1 million worth of assets that are subject to seizure? These are foreign nationals, and so the seizure. Well, this interpretation that you're suggesting might make sense as a reading of the word capital in the statute, but it doesn't seem to make sense as a reading or an interpretation of this regulation, which just uses the word cash. So the regulation sets forth various categories. And so the question here is, are these properly treated as cash, or are they properly treated as indebtedness? So the agency, of course, here has interpreted this scenario to place loan proceeds in the indebtedness bucket. But what does indebtedness mean in the regulation? I mean, there's not a lot of really helpful understanding of that in the briefs. So the agency has not promulgated the definition of cash or a definition of indebtedness, which is one reason why we did not point to that. This question here is, which of those buckets does this fall in? It has promulgated the definition of a statutory term, but hasn't, I guess, promulgated the definition of, you know, a further definition of regulatory terms. So this question is, how does the agency interpret regulation that has promulgated and to which bucket those loan proceeds fall into? And by looking to sort of other contextual clues in the regulation, in particular, the at-risk requirement, we talk about how the additional restrictions that are placed on indebtedness that under the plaintiffs' I don't know if you're talking about, I don't mean to cut you off, but I just want to be clear what term you're talking about. So there's two terms in your regulation at issue, cash and indebtedness. And for you to have any authority to interpret those terms, arguable if they're possible authority, they have to be ambiguous. Are you arguing that cash is ambiguous? So we are arguing that the proper reading of the regulation is to treat You have to have an ambiguous word to interpret it. So I'm trying to figure out what it is that you think you're interpreting in adopting this rule. Is it that the word cash is ambiguous? Or that the word indebtedness is ambiguous? Or both? Or neither? So we believe that the best reading of the regulation is to treat them as indebtedness in terms of Treat what as indebtedness? Treat loan proceeds as indebtedness. So that's your interpretation. So I take it from that that you're saying that the word indebtedness is ambiguous in your regulation and that's what you're interpreting here. That's what this dispute is about is what indebtedness means. That's correct, Your Honor. But you're not arguing that cash is ambiguous? I mean, I guess I'm a little Is cash ambiguous? So I guess I'm a little confused, Your Honor, because the question here is which bucket does it go in? So it's not a question of I thought you were going to relate Well, I was just going to say the regulation doesn't have to be ambiguous in order for you to interpret cash loan proceeds to go into one bucket or another. I mean, the question of ambiguity just turns on whether we would have to defer to your interpretation. So we do believe that this is the proper and the best interpretation of the regulation. Certainly at this court You have to be interpreting indebtedness to sweep in things that would otherwise unambiguously be cash. The loan proceeds are cash. And your theory has to be that some idea that the specific qualifies the general and if cash is also indebtedness, it counts as indebtedness. So that, again, Your Honor, does sort of go to the ultimate question. I know that plaintiffs point out that in the final rule promulgating the regulation that the agency added indebtedness and cash equivalence as an additional category and say that that then narrowed the category of investments that could qualify. We point out that that assumes a conclusion that loan proceeds would count as cash in the absence of indebtedness. And if you didn't have indebtedness, how could you read the reg to say that loan proceeds are not cash? So in the final rule, the agency said that, speaking of the NPRM, the definition of capital was limited in the proposed rule by excluding all types of intangible property, cash equivalence, and debt financing arrangements. So the agency in promulgating the final rule said that the proposed rule, which said cash on indebtedness, excluded debt financing arrangements. I think one could reasonably understand investment of loan proceeds to qualify as a debt financing arrangement such that it wouldn't have fallen within. Do you have a definition of indebtedness? Would you have? To follow up on Judge Rau's question, you have a regulation here that begins with nouns, cash equipment, inventory, intangible property, cash equivalence, and indebtedness. But, of course, I don't give my state of being indebted to a company. That would be of no help to the company. So you all must have meant something, and it sounds like, at least from the briefs, the competing interpretations we have are indebtedness means indebtedness to the company. You owe the company, like a promissory note, you're going to pay them money. That seems to be one interpretation. So they would read that as fitting with the things from before. And then your argument is that indebtedness means if you have to take out a loan, is it indebtedness to the company you're investing in, or is it indebtedness to someone else, or both? So, again, the agency hasn't promulgated this. So this is me speaking here at the podium. But if you put the two together, so you've referenced indebtedness to the company. The reason that loan proceeds would fit within that as well is because it's a financing arrangement where the investor is on the hook or obligated to repay another party. But they're not indebted to the company they're investing. So when I say to the company, I mean the new company, the one they're supposed to be investing something in, whether it's cash, equipment, inventory, or this indebtedness. So a promissory note would be, or a sort of form of accounts receivable in the hands of the new company, would be giving them a form of, in ordinary parlance, capital. It would be a thing of legal value. It would say, I'm entitled to this income stream from Judge Millett. She's going to pay me $10,000 a month for however many years. And that's a valuable thing that it has. I might be able to even sell it to someone else or take out loans against it that's collateral. That's something the company would hold. If I'm indebted to the bank for the cash that I give to the company I'm investing in, all that company has is cash. So again, that's considering the transaction from the perspective of the new commercial enterprise. So which way does the agency look at it? So it reads it to encompass both situations. So the regulation does not say indebtedness to the new commercial enterprise. The regulation simply says indebtedness. So if you take the two situations we're talking about here, the promise to pay the new commercial enterprise and the agency also reading it to say that it encompasses situations where the investor is indebted to a third party, then you put those together, then it would be indebtedness means an investment that is based on a financing arrangement where the investor has an obligation to pay a third party. It just doesn't make any sense because the point of the visa program is you get the visa by making a substantial investment in a U.S. enterprise, which can take the form of any number of assets like cash, tangible property, cash equivalents, right? You don't get the visa by transferring a liability to a U.S. company, right? The indebtedness in the sense that the investor owes something to his or her bank. You get the visa by transferring an asset, which would be Judge Millett's promissory note. And then everything makes sense. So the program awards visas to individuals who invest their assets in a new commercial enterprise here. When we're talking about a loan that is secured by a third party, if the new commercial enterprise goes under and the person, the investor defaults on the loan, secured by a third party, then... Defaults on the loan, but so what? The U.S. enterprise has the cash. The bank comes after the investor, not the U.S. enterprise. The U.S. enterprise has the cash, but the individual, it's not really their money that they've invested. It's money that they've gotten from somebody else that they're not even really on the hook for. You could have situations where you had a person... How would you not on the hook for a bank loan? That doesn't... What does that even mean in ordinary terms? How are they not on the hook for that? Because the loan is not secured by their own assets. If they default on a loan... Isn't your broader argument even more problematic for the fact that the agency has included the word indebtedness as part of capital? Cash loan proceeds to me seem like more of an investment made by the visa applicant than a promissory note in the indebtedness category. Which would you rather have? If you were trying to get a company up, would you rather have... It might be that indebtedness is not within the statutory definition of capital at all. Okay. So the question being, Your Honor... Why is indebtedness even... in its regulation? So this issue is not fully briefed here, Your Honor. But that is the term you're relying on. So I'm speaking here without the opportunity for full briefing on that question. I believe the answer would be that a promissory note is considered capital generally. So perhaps from a perspective of a new commercial enterprise, getting a wire transfer may be something they feel like is a more secure investment than a promissory note. But I'll confer with my co-counsel to make sure that I'm not speaking out of turn here. But I would anticipate that the agency... One reason the agency included indebtedness such as to cover promissory notes would be because in the world at large that promissory notes are treated as capital. And so are cash loan proceeds. That's true. And the agency treats them as capital provided that they meet the additional restrictions that the agency has placed on indebtedness. I'm donating equipment, and I'm donating $500,000 or $1 million worth of equipment and inventory, forklifts, a warehouse, pallets, all these things for Amazon to use somewhere, something like that, all right? I meet the dollar amount. I'm donating all that equipment. Do you ask whether I had to take any loans to get that equipment, or do you just value the equipment? So the agency investigates the source of any investment. And so you've discovered that it's perfectly lawful. But I had to take a loan out to get half of the inventory. So the agency investigates the source of the funds. And so if the agency discovered that... Have you done this for equipment? Have you offered the same definition for equipment, that it's not equipment, if you had to take a loan to get it? So that's obviously not the practice scenario here. I'm asking you whether you're consistent in this interpretation, that's all. So I spoke with the agency about that. They were not aware offhand of that happening, that scenario occurring, but that if it did, that they would treat it the same, that they would investigate the source of the funds. Have you had people donate equipment or inventory or other tangible property to meet this definition in the past? So that's a very rare occurrence. It may be rare, but you've had it happen in the past? So the agency has told me that it's rare. Which means never, not never. The agency has told me that it's rare. They have not told me that it's never. Okay. And then in the cases where it's happened, they've looked behind to see whether the people had loans? We don't call it a forklift anymore if it was purchased with a loan? So the agency has told me that they always investigate the source of the funds. For the lawfulness, they have to do that. I guess what I'm trying to ask is when they, in the one or two cases throughout the history of this statute, when someone donated equipment, inventory, or other tangible property, did they look behind? And it was all lawful, clean, nothing to worry about there. Did they look behind to see how it was financed? So my understanding is the answer to that is yes, Your Honor. Both Matter of Ho and Matter of Specie, which are two of the presidential decisions, state that the petitioner must establish that the investment was the petitioner's own, and that means that the agency investigates the source of the funds. And so in the scenario that you posit. Well, showing that it's my own as opposed to I'm a funnel for somebody else is not the same thing as saying it's my own, even if I have a loan.  I mean, so these go to definitional questions, Your Honor. So mortgage, I'm not a homeowner, so I'm not an expert on this process, but the title is held by the bank, correct? I could have sworn I had property rights. So that's true, Your Honor. I thought I might even be able to take out a second mortgage. But the agency investigates the source of the funds to ensure that. So you're representing that in however many few cases where someone's donated equipment, inventory, or other tangible property, you're representing that affirmatively they checked not just for the legality, the lawfulness, but they actually checked to see whether the person who donated that may have had to take out a loan for some of the property. Not whether it's theirs, as in it's someone else's property, but whether they had to take out a loan. That's your representation? That's my understanding from the agency, Your Honor. Okay. If it's different, you'll send a letter to the court telling us about that? Yes. Yes. You also mentioned the at-risk requirement. But as I read the regulation, what makes something at risk is whether you've invested it, actually invested it in this new enterprise,  the contrast is have you put it at risk evidence of mere intent to invest or prospective investment is not going to satisfy the at-risk requirement. That's very different than saying it's not at risk just because I also have an unsecured loan. It's at risk as soon as I take whatever that asset is and let go of it and release it into this company for the company's purposes in the hopes that it will generate jobs and be a successful business. That is a form of risk, is it not? So you would not get those funds back, Your Honor, but this goes back to the question of what happens in the event that the new commercial enterprise goes under and the investor defaults on the loan. That's the type of risk you're talking about in the regulation? That you put the money in, I am not going to get it back? That includes that, Your Honor. And it also includes, where's the word there in front of property in your regulation? Invest means to contribute capital. It doesn't say your personal capital. So the EB-5 program awards visas to individuals who invest capital in the United States. The idea is to incentivize and to reward people who invest capital. I suppose this perhaps goes to an ambiguity that may exist in the statute, but the purpose of the program is to award visas to individuals in an immigration program. And the idea is that if folks invest their capital, they get a visa. The idea is not for somebody to go get capital from somebody else and invest that and then reward their use of somebody else's capital. Sorry, that just goes to my question of, I mean, perhaps this is something the agency, this interpretation is one that the agency could have adopted through amending the regulation because it's consistent with the statute. But that doesn't necessarily mean it's consistent with the regulation that has, in fact, been promulgated. I understand, Your Honor. And, again, our position is that the definition sets forth various buckets, categories of investment. This case is about which bucket do loan proceeds fall within and that the agency has interpreted its own regulation to mean that loan proceeds fall in the indebtedness bucket rather than in the cash bucket. You talked about, lots of talk about past practice of the agency. And the petitioners put in declarations to individuals who talked about literally hundreds and hundreds of petitions being granted for their clients prior to this phone call without any, even though it was when they investigated the source of the funds, there had been loans behind them and they were granted without so much as a word being spoken. Do you dispute the fact that those declarations, do you think those declarations are all just wrong? So I believe, Your Honor, those declarations were attached to an amended, so plaintiffs sought leave to amend their complaint below and attached those declarations to their amended complaint. I don't believe that the Court ever ruled on that motion. So they are in the record to the extent that they were. Do you deny, I'm just saying, I'm just asking as a matter of fact, I mean, you talk about a couple unpublished, non-presidential decisions. Does the agency dispute that at least prior to this phone call, hundreds and hundreds of people got these petitions, even though some, maybe all of the money they contributed came from loans? So I'm not sure that we can see that there were hundreds and hundreds. These were attached as declarations to many, many people. You all know, if you don't want to look at their declarations, you all know what was happening before the phone call. And again, there are some scattered references of past practice, but I didn't hear the agency either, I didn't see them put in a declaration or represent in their briefs that in fact, although they said this has been the definition all along, that in fact, the agency had always enforced this examination of loan scrutinization on the EB-5 program. Is that your position, that they have always done that? So, Your Honor, I cannot say that the agency has never approved a petition based on an investment of loan proceeds like we're talking about here. Approximately 10,000 EB-5 visas are available every year. The program's been in existence for 30 years. I don't know the total number of visas that have been awarded during that time, but it's, I think, well over 100 and perhaps well over 200,000 visas. There are roughly around 100 adjudicators, so there's a significant volume that goes through, and it may have been the case that there were some number of petitions that were approved in contravention of the agency's position as to this issue. Those people that are administering, that are making these decisions out on the ground, I guess you have to have people probably all over the country doing this. Was there, again, I was just surprised, was there a manual that tells them, here's what you do, that you need to look behind, not just for lawfulness, of course, and to make sure they're not simply a straw man, but you also, if it isn't a fact, you know, they've given cash, you need to know whether or not that's the product of a loan. There must be, you must give instructions to these folks, is that correct? There must be, they can't just be left off on their own, right? So we've identified a few things, Your Honor. There's a 1995 Office of General Counsel memorandum. There are the various... Would that have been sent out to all these people that are administering this program? How do you train the people that are making the decision on the ground? About EB-5. I mean... I get they have a big volume to do. There must be some guidance given to them. There certainly is guidance given to them, Your Honor. I don't know the details of that program. But does that guidance include the requirement, or did it at least prior to the 2015 phone call include some requirement that they check whether or not the cash is a proceeds of an unsecured loan? Or just check it to see whether it's secured or unsecured. Is that guidance to them? So the administrative office appeal decisions certainly do state that. That's not my question. You said they gave guidance. So is it in their guidance? It seems like a really important thing. Is it in the guidance? So plaintiffs have pointed to some guidance that was dated, I believe. This is in the JAA. It might have been 2014 discussing this issue. So to answer your question, yes, in terms of when the earliest was that such guidance may have come out. I don't know the details of the guidance program. Nobody checked for purposes of this? For folks. So I don't know to the extent that there may have been an official guidance document that came out 20 years earlier. I don't know the answer to that question, Your Honor. I just have one more question just to make sure I understand how this works. If I have a bank account and I have $500,000 in there of my hard-earned cash and $500,000 in there of interest-free loan from my parents, and it's all mixed in one bank account, and I invest $500,000 cash in a company here in the U.S., does that count or not? So if we're talking about pre the recent rulemaking that increased the amount, and we're talking about a target employment. Whatever the requisite amount is, I have that amount, double that amount in my account, half of which is an unsecured loan from parents and half of which is my own hard-earned money. And it's, of course, all mingled together in a bank account. What happens? So if you have an amount that is free and clear and that is sufficient to meet the investment amount, then that would satisfy the requirements.  May it please the Court. My name is Ira Kurzman. I'm here representing the plaintiffs. I'd like to begin by just giving you one example, and the Court could treat it as a hypothetical, I guess, or treat it as the real case. But this was the case that was joined with this case, which was Xi Jinping Wang's case, and then the government decided to dismiss the appeal. And I want to bring that to the Court's attention because it so dramatically demonstrates why the government's position really makes no sense. Xi Jinping Wang got a loan from a bank. She put up $250,000 as collateral. She had a property, and it was obvious that the property was given to her by her father. Her father had another property, which was worth $250,000, and they used both of those properties as collateral for the $500,000 loan. The government said that that was not sufficient because her father's loan was his money, and therefore she hadn't made a $500,000 cash investment, even though obviously she got the cash and invested it into what we call the new commercial enterprise. And what makes this even more ridiculous is that if the ---- But to be clear, the government has not appealed that case, so it's not a certain position anymore. That's right, Your Honor, but just taking it as a hypothetical. Well, I guess I take it it's not their position anymore, that that wouldn't count. Well, their position actually in the district court is that they're waiting for this court's decision. They refuse to do anything in that case. But to make it more ridiculous, and whether it's Xi Jinping Wang or anyone else, if a father actually gave her a gift of $500,000, that would be okay. If the father put up the collateral for the $500,000, it's not okay under the government's reading. And the reason why none of this makes sense is that I think, as Judge Katz has pointed out, really, and that's the thing I never understood in this case from the very beginning, which is cash is cash. Well, can I point you to, in the regulation, J to Little Roman V? Yeah. I was going to ---- I'd like to, because I think that's the government, and I think Your Honor was, I think, trying to get at that with what's their definition of indebtedness. So they say, they just say up front, if you're doing, this is about what documentation you have to have with your petition, evidence of any loan or mortgage agreement, promissory note, security agreement, or other evidence of borrowing, then you have to, which is security, you have to show the secured assets. Why isn't that dead on what they're arguing here? Okay. The reason why it isn't is the following. First of all, that part of the regulation, along with the indebtedness part, was not in the original proposed regulation. I understand. This tells us, this is, helps to inform their definition of indebtedness. This helps to tell us, this came in with indebtedness and tells us what they think indebtedness is. It could be a promissory note, or it could be a promissory note plus evidence of borrowing. But, in other words, that's just an evidentiary requirement, and if you look at that, Why would you have that, why would you have that evidentiary requirement regarding loans and any type of borrowing if all you were talking about is promissory notes? Well, because the way the regulation, both regulations are written, 204.6E, the definitional section, and then 204.6J2V, the section you're talking about, is they're basically saying to provide proof of cash or all the other things listed, including indebtedness, you can provide one of these things under 204.6J2V, and the first thing under 204.6J2V makes it clear How would a loan, this may well be the limits, this is going to reveal the limits of my imagination here, but how would a loan be a form, I assume it's a loan by the individual, be a form of indebtedness, a gift to the company? Okay. What would be an example that's not a promissory note? Right. We believe all of those things listed in 204.6J2V are promises to pay. In other words, originally the regulation just said cash and said other things, and then they expanded it for people who may not have had the full $500,000 in cash to give them an opportunity to still buy into a new commercial enterprise. So a promissory note is obvious. That is, we're giving a promise. Let's just deal with a loan right now. If I make a loan to the company, it's going to be secured by my assets? That's kind of weird. And wouldn't the loan just be cash? I just don't understand what the loan means unless they're talking about the interpretation they've given us. I think this is what it means. If you go to a furniture store and you buy furniture and they say we'll give it to you as a loan, that is, you get the furniture right away and you have to pay us a loan. It's the same thing with the new commercial enterprise. That is, we're giving you the equity interest or whatever that interest is in the new commercial enterprise, the stock, the property, whatever it is in the new commercial enterprise, and in exchange you have to pay off this loan to us. So in that way it's like a promissory note. And the same thing is true of a mortgage. How would that type of loan be secured by the assets of the petitioner? No, it's not secured by the assets. It has to be under V. It has to be a loan that's secured by the assets of the petitioner. By the assets of the petitioner. Right. And what that means is whatever assets the petitioner. How would they be securing? I'm just not understanding. This is my fault. My brain's not working well enough here. How would their assets, the petitioner's assets, somehow be securing the loan of furniture to the company? Okay. No. I misunderstood you then. To me it's like a promissory note. If I can just start with that, I understand what your Honor's asking. If you have a promissory note, they're saying with the promissory note you have to have your own assets to back that up in case you can't pay the promissory note. A loan is the same thing. We're giving you the NC, the new commercial enterprise. It's just another form of a promise to pay. What am I giving? In the loan example, what is the petitioner giving to the new company? The petitioner has to, just like a promissory note, he's getting a loan from the new company, and he's backing it up with his own assets. He's getting a loan? How is getting a loan from the company an investment in the company? Because he has the security interest. They've given him whatever that, just like a promise, it's a promise to pay. The promise to pay runs from the petitioner to the company. I thought you just said the loan runs from the company to the petitioner. Did I misunderstand? Okay. No. I think that's right. In other words, let's look at a promissory note. What is a promissory note saying? It's saying, give me the property now, and I promise to pay you in the future, right? This promissory note, $10,000 a month or whatever the example you gave before. A loan is just another form of a promissory note. It's saying, give me the property now, okay, and I will pay off this loan to you in the future. And I have to have assets that secure that. Why wouldn't they call that a promissory note? I'm sorry? Why wouldn't they call that a promissory note? I'm sorry. Does that normally get called a loan rather than a promissory note? No, I'm just saying, I think what they did in this regulation. So your view is that loan means, so what V says is evidence of any promissory note, promissory note, promissory note, promissory note, or other evidence of promissory note. That's how you're reading that? Just to be clear. I understand what you're asking. I think we're reading it as these are all promises to pay in the future. And it was designed for the purpose of allowing people who didn't have the $500,000 in cash to still be able to get involved in these projects by expanding the range of people who could be involved. And in fact, we're not alone. And I want to just point out to you, Your Honor, the government, as late as 2013, in a memo, if I can just, in one of their own memos in 2013, which we note, a policy memo of March 2013, which is noted in our brief, says just that. That is, they say capital is cash, and we need to broadly define it. And then they go on and say, but there are other promises to pay. They use that very language. They say promises to pay. But they just say promissory note. They don't tell me what they mean by all those other words. If you're talking about page 3 of that memo. Yes. Right. It just says a promissory note, and I'm asking what loan, mortgage agreement, security agreement mean in there. But they characterize those as promises to pay. I guess it's – I understand what you're saying. It's just normally if you're writing a regulation that says promissory note, and by promissory note we mean all these other things, too. You would go say promissory note, including, and then you'd list the other things. But instead, it's just a list of items separated by commas, of which promissory note is one in the middle. I agree with you. I don't think it was particularly artfully written. I think what it meant to say is here are just different examples of promissory – of promises to pay. A mortgage, a loan, a promissory note. So I think what they were saying about indebtedness was these are examples of it, but it has to be secured with your own money. Now, the point is that that is totally different than cash. I mean, every rule of statutory construction here, there's no ambiguity about cash. Every dictionary defines capital as cash. The regulation says cash. It doesn't say cash with some kind of form of indebtedness, which is what the government seems to be arguing. It just says cash. And cash means what it means. And I think the point that I think all three of the judges have made here is that the cash actually goes into the investment. Whatever the responsibility is of the individual who got the cash, that's his responsibility. But he's actually put cash in the investment. And the government has a whole series of hypotheticals, you know, visa mills and so forth. That's all taken care of by the other provision under 204.6E that says in defining capital, it cannot be capital that's unlawfully obtained directly or indirectly. So I think it... Could we talk for a minute about class certification? Yeah. So, gosh, I see a lot of problems with this class. I mean, it seems to me it's not ascertainable. It's open-ended. And the relief is not indivisible. So I don't see how you satisfy B-2. So why shouldn't we rule in your favor on the substantive point, which seems pretty strong for you, but just let this go forward in the normal way of people who are denied visas seek review case by case? Well, I think, first of all, it's a red herring in this case, Your Honor, for the following reason. As part of our agreement with the government to stay the effect of the decision, the government agreed to look back at its own files and make a determination as to who was covered. So this argument that somehow it's open-ended and they have to go back 30 years, they've already done that and there's only 134 people who were part of this class. Secondly... I'm sorry. What's the agreement you're talking about? Okay. Initially, there was no stay. So the government had to, in effect, you know, go back and look at all these cases and make new decisions. And we agreed with the government that they don't have to do that until this court makes a decision. But as part of that agreement, they would go back and ascertain the cases that are involved in the class. In other words, who are the class members? Within the statute of limitations or outside the statute of limitations? I'm sorry? Within the statute of limitations or outside the statute of limitations? Both. I mean, we didn't – no one made any issue over that. And the second, I think... The breadth of the class to the extent it sweeps in time-barred claims. Are you saying that that argument in their brief is in violation of... I think it's moot. I'm not saying the government tried to do anything improper. I just think it's moot at this point because we've identified who those people are. I suppose they could still argue... Well, I don't mean... The question is whether... They're beyond the statute. Whether they get relief. Someone whose application was denied 20 years ago should get relief. Okay. Well, with respect to that, the government had the opportunity to object to the class initially. And that part of the class was still the same. In other words, they said, well, the judge broadened the class. But the judge didn't broaden the class going back 30 years. In fact, the judge has broadened the class from 2015 forward. And in other respects, the judge narrowed the class. As to the petitioners with time-barred claims, you have a forfeiture argument based on their failure. But that's different from what I'm hearing for the first time, which is a separate argument that that objection may be barred by an agreement. Well... So let's just put forfeiture... Okay. Let's put that aside. Right. I understand. So I think we would say that they did waive it. They forfeited it. They had the opportunity to raise that before. And they failed to raise it. I really think it's kind of... I mean, the court may want to rule on it, but I really think it's kind of insignificant. Because the reality is, if somebody had an investment 30 years ago and they were denied 30 years ago, they're not here. I mean, these are all very current investments. Well, can you... I understand it's a legal matter. As a conceptual matter, the proposition that individuals who were denied relief in agency adjudications can have a class certified with regard to a cross-cutting legal issue seems to me very problematic. I mean, someone denied a social security benefit can bring a B2 class of 5 million people whose benefits are denied on the same ground. I guess what... We don't do that. Yeah, no, I understand. I guess what I would say is, in this case, on these facts, we believe they've waived it or forfeited it by not raising it originally. And the truth is, it really doesn't have great consequences so that the court could rule and simply say that, in this case, on these facts, they forfeited it and it wouldn't make much of a difference. Thank you. Thank you. Does Mr. Bates have any time for rebuttal? Mr. Bates, I have one more question. We'll give you two minutes. Thank you, Your Honor. I'd like to address a couple of the questions that the court had for me that I conferred with my colleague about. As to the question about agency guidance, so there is a policy manual that is updated periodically. It's been in place for a number of years. I don't know from the very beginning of the program, but it's been in place for a number of years. It's called the Adjudicator's Field Manual. Some excerpts of it are cited in the joint appendix at 203 and 249. I believe those are from more recent copies of the field manual. But there is a... Post-2015? So the ADA doesn't say what the dates are. I believe in the context it would be 2014 or 2015. But as for the proof of what the policy was before 2014, you got nothing. The field manual prior to 2014 is not in the record. All right. As to... Let's see here. As to Judge Rouse's question about where indebtedness came from, in answering your question, I did neglect to mention that in the final rule, the agency pointed to the E-2 investor program, for which the sub-regulatory guidance says that indebtedness can qualify as capital for purposes of the E-2 Treaty Investor Program. So that is one basis that the agency looked to for coming up to add that. Is indebtedness further defined in that regulation or in that program? It is not. It is not. But it does appear in the sub-regulatory guidance for that program. And I just want to make sure, Judge Millett, with regard to our colloquy about the agency's prior practice and whether they had ever in the past approved an investment that was based on equipment or inventory without looking back to determine what the source of the inventory or equipment was, I will confirm with the agency whether they are aware of that happening. There have been hundreds of thousands of petitions submitted, and they don't have like a clear database of what all those were. But I will confirm with the agency. Well, I don't mean to put people to tons of work looking. I just thought somebody would have some institutional knowledge. I will confirm with the agency. And if they are aware of any, we will notify the court. Can you also speak to the agreement that Mr. Kurzweil mentioned? So the agreement was that we would try to come up with a process for ascertaining the class, as we discussed, for ascertaining the class. As the declaration of the grant that Jay indicates, this would be a very difficult process given the number of adjudications through the years and the fact that there's no sort of 30 years. He says there are 134 people. Is that your understanding as well? Of? Of people in the class. He says that that's been determined, so it doesn't really matter at this point. So that is based on some investigation, I believe, that the plaintiffs have done on this issue. That's not based on going back through 30 years of agency records. That's based on some investigation that I don't recall the name of the organization, but a declaration, I believe, that they attached to their motion for class certification, perhaps, talking about efforts that had been undertaken to find members of the class. But by looking at some number of regional centers or some number of new commercial enterprises, they had determined that there were within that category they looked at 134, but that was not exclusive. So that's not a number that the government necessarily agrees with. So may I have a moment, Your Honor? So the plaintiffs asserted that there were 134 within the statute of limitations based on the declaration that it submitted with its... Sorry, within the statute of limitations? Yes. Okay. Yes, yes, that's within the statute of limitations. That, I believe, again, was based on the investigation they had done on some subpart of the program that, of course, does not go back all 30 years. And with regard to your question, Judge Katsas, we did agree to try to come up with a process for figuring out what the class is, but that part of the agreement was that that would be stayed during the appeal. Do you understand that agreement as giving up what I think would otherwise be a pretty good argument for the government, that this class is not ascertainable? No, Your Honor. We do argue that... You sort of hinted at that in your brief, but not very directly. So we did argue that ascertaining the class here would require unmanageable individualized entities, or I'm sorry, unmanageable individualized inquiries. So the district court confined the class to people who were denied solely because of this interpretation about the social loan, so what would be individualized? So... As soon as you see another reason, they're out. If they were solely denied because of that, you wouldn't have to redo a whole new inquiry. I'm just trying to find a JAA site here, Your Honor. So the declaration we submitted at the very end of the JAA, 326, talks about what would be required to ascertain the classroom. So you are correct that the district judge did limit it to individuals whose denials were based solely on that basis, but that is going to require the agency to go back through 30 years of records and figure out... Figure out whether or not there's an alternative ground of decision, go through hypotheticals like Judge Millett's about what happens if there's partial indebtedness on the balance sheet of the applicant. It seems like this is a... Seems like there's a lot more work to be done here to figure out who's in the class than your normal class of students in the segregated schools or people injured in the mass accident. That's correct, Your Honor. Which is why it's altogether flabbergasting that you didn't raise the statute of limitations objection to the class as formulated by plaintiffs, as amended going forward, not backwards, by the district court judge, and that you submitted this whole declaration about how hard it's going to be in district court without even a Rule 59 motion or argument about the statute of limitations. The government's a very sophisticated litigating entity. So my assumption is that when it doesn't raise something, it doesn't raise it for a reason. Why, on what possible ground should we jump into your shoes as advocate and raise an argument for the first time here on appeal that you had every opportunity and you even documented the costs of doing but didn't raise? So as we explained in our briefs, Your Honor, this was an issue that was not really at issue in the district court briefing. Wait, that doesn't make sense to me. It wasn't at issue because you didn't raise it. The formulation the plaintiffs had about the class, right? This is how it works. Plaintiffs come forward and they say, here's our defined class. And then the other side, in addition to saying, you're all wrong on the merits and we shouldn't have a class, says, and that class is too broad, wrong for whatever reasons, which could certainly include you're going back 30 years and the law only lets you go back six, and you didn't do that. And then the district court reformulated it going forward so you had a second shot. And it's not brief because you didn't raise it. They're not going to raise it on their own. And then you went and you figured out how much work it's going to take to go back without a statute of limitations limitation, and you told us how much work it would be and that that would be unworkable, but again you never said you should have a statute of limitations in the class. So it doesn't work for me, at least, to say it wasn't brief. That's exactly my point. So why are we supposed to play lawyer now and raise the claim for you? I understand, Your Honor. The entire theory of the plaintiff's case here was that the April 2015 rule announced a new policy. That wasn't the entire theory because one of the plaintiffs here, I'm going to get the name wrong. The one with the M. Maybe Mr. Haguaro? Yes, I keep forgetting the first name. Mr. Haguaro was denied in 2014, so that's not the entire theory of the plaintiff's case. Well, and looking at the complaint, what they say is that the agency abruptly adopted this, what they characterize as a new policy. They say long after plaintiffs made their investments and filed their petitions. And what you say is that that was a restatement of nothing more than a restatement of rules that had been settled for a couple of decades. That's correct, Your Honor. So you knew in your theory you'd been doing this for decades? Applying this current interpretation. For decades. So you knew that, under your theory at least, it wasn't a problem that started in 2015 or even 2014? That's correct, Your Honor. Which again makes it even more surprising, breathtakingly surprising to me, that statute of limitations wasn't mentioned. I understand, Your Honor. And you haven't even argued plain error to this court? We have argued that to the extent that this court finds that this issue was not presented below, as it should have been, that this court has... To the extent we find you agree it was not presented below at any point? I'm sorry, Your Honor? You said to the extent we find you agree that it was not remotely presented below at any of the opportunities you had, correct? That's correct. Okay, so as far as finding, we're taking your word that you didn't raise this below? We have argued that the court still does have discretion to reach the issue here, Your Honor. And again, that Plano's argument was that this was a new rule that was announced in the 2015 telephone marks. Plano didn't expressly say when they think the new rule went into place. From how they stated their complaint, it would have been sometime between 2014 and 2015. So it was all about a new policy. And so the question of going back to folks who didn't have time-barred claims... To be clear, I'm sorry, but your argument was no, we've always been doing this. So it wasn't though you thought your whole theory was that we've always been doing it. So if it's wrong, we've been wrong a long time. That was your legal position way before 2014 or 2015. It's our position that this has been the agency's practice going back a very long time. Thank you, Your Honor. Thank you very much. The case is submitted.
judges: Millett, Katsas, Rao